May it please the Court, I'm Sean Roberts from Aegis Law Group and I'm here representing K-12 Insight, the appellant. Can you talk a little louder? Sure. Because if you don't, I'm not going to, maybe you don't want me to hear, but if you do. Of course, Your Honor. I represent Appellant K-12 Insight and we're asking the panel to overturn the decision of the District Court to grant summary judgment in favor of Johnston County Board of Education. District Court granted summary judgment on three individual bases. One, lack of pre-audit certificate on the agreement. Two, that the contract is executed outside of the superintendent's authority. And three, that the agreement was properly terminated for lack of available funds. I think that third issue, lack of available funds, is an intensely factual issue. Unless the panel has specific questions, I tend to stand on my brief for that issue and focus on the first issue. Tell me what makes it an intensely factual question. Either they appropriated the money or they didn't. And you're not entitled to go back and question their judgment, are you? I think it's about the trier of facts judgment and not fair judgment. The question is whether they did appropriate funds. If funds were appropriated to them, available contract. And I think it is clear that funds were available. That their budget went up. That funds for that specific line item went up. And funds that the board themselves appropriated for that line item went up. Even after a receiver receiving their funds from the county, the amounts for that line item went up. Well, even if what you say is true, the legislative body has the right to appropriate the money. So you did have excess money. Well, maybe we need to fix more roads than have this contract. And so you have authority to challenge that? We were talking about a contractual provision. And I think that if you're saying that there is no ability to challenge a decision about whether funds were appropriated, you're basically saying it's an illustrious contract. There was no requirement to pay funds in the first place. And I don't think, looking at the structure of the contract, that's what's happened here. I'd also note that the board was required by statute to appropriate funds for continuing contracts. So it wasn't within their discretion not to. No, there may be a certain equitable unfairness to those who contract with the government. But you're on notice that equitable doctrines like estoppel and other equitable contract doctrines are simply unavailable when you're in a government contracting situation. And I think everybody that goes into a government, or many people who go into a government contracting situation, understand that they do so to a certain extent at their peril. And I think Judge Floyd raises a good question. At the bottom, even given this contract, I'm not sure that we can simply hold a gun to the school board's head and say, you have to appropriate this. There may be that kind of case where the terms of the contract permit us to simply order a school board appropriation. But that's an intrusion of sorts into a local government's orderly process. And I would want to see a firmer contract. I think we're within our rights to want a firmer contractual basis before we take that step. And you've got problems with the contractual language and with the way the contract was submitted and with what was laid out in the July website and the rest. And when you take these either singly or in combination, I'm just not sure that they rise to the level of justification of requiring the school board to come up with the money. In fact, there was a case decided this year, I think Judge Qualbom wrote the opinion, ACA financial guarantee where that issue came up. And the fact that it did not appropriate the money, he held that that didn't constitute an event of default. Now, I don't think you all cited that case, but that's what it stands for. So I'd say a few things to that point. One is that was a Virginia entity. So you don't have the issue of this North Carolina statute requiring to appropriate. Two, the board did in fact appropriate funds for a very specific line item that included this contract. They don't appropriate based on certain contracts. They appropriate funds, their budget resolutions, appropriate funds to line items. And they did in fact, the board, appropriate funds to that line item. So whether they had to or not, they did. So I take your point on that and I recognize that. Is this the only thing that's paid from that line item? I couldn't tell that. I am not sure. It couldn't be that many. I don't think it's the only thing. I think the line item is something about $400,000 a year. Well, they allocated an additional $60,000. That's correct. And there have already been $400,000 in that? Is that what you're saying to me? I'd have to look at the exact numbers. I know it's in the range of, in my opinion, $300,000 to $360,000. Okay. Something around that. And the contractual price each year was? $85,000. $85,000. So there was enough money in the line item allocation to pay you all. Yes, there was. Yes. There was in 2016 and it went up from there. And the board doesn't dispute that? I thought the board said in its brief, just because the funding allocation to a single line item increased in a given year does not mean that the funds were available for a specific contract under that line item. So I read that as yes, the money went up, but, and you've just told me, you don't know what was in fact going to be funded from that line item. I don't know what was going to be funded, but everything the board has pointed to are items that wouldn't be in that line item. So we're talking about special education funds, teacher salaries. That's all outside of the line item, even outside of the broader categories, subcategories. Does this line item have a name? It has a number. That's all it does. There's no narrative description. There's no narrative description. Those numbers do refer to specific items within items. So like the first number would refer to, I don't know, could be support services and then each number kind of narrows the category down. So it is possible to read generally what it's about. So generally what is it about? But it doesn't have specific names. It doesn't help you. If the numbers help you, if the numbers tell you that this line item is to be used for contracts like K-12s, you would tell us, right? Yeah, it is contract services. That's part of the line item. It's services. Contract services. Contract services. Okay. But I don't know. I don't know exactly what is normally in there. That's, I guess, part of the board's budgeting procedures. That's something I'd have to ask K-12 or to ask Johnson County. Okay. So one of the difficulties here, I think, is if we were to rule in your favor whether we would be opening the door to having subordinate school officials or school superintendents going out and contracting beyond their designated authority. And in so doing, they would be circumventing the school board's authority and arrogating that authority unto themselves. And all of these school boards have distinct limits, or most of them have distinct limits on what the school administration, on what funds the school administration can commit. And on its face, this contract appears to exceed those funds unless you start chopping it up year by year, which would give school superintendents the authority to sign contracts over a period of years, committing funds far in excess of what the school board intended their that this will throw local school board funding into some state of confusion. And that's the difficulty that I have for this is it seems in a number of ways, both in the way the thing was submitted and also in terms of the school superintendent's authority, it seems to me to pose some danger to the orderly process that we would ideally wish school district financing to be. That's the difficulty. I don't want to throw local school financing into a greater state of confusion than it presently is. So I'd say a couple things. One, if the legislature wanted to have a statute that limited the amount that could be delegated and limit the authority of superintendent-centered contracts, they could do so.  And it has allowed apparent authority arguments to go forward. And that didn't throw local governments into chaos. There is inherently a higher bar when you're talking about a public entity, but North Carolina has allowed that. Can I ask you two, you spent a lot of time on the third basis, and there were three bases here for the decision. Maybe you could briefly address the first two? So the first one, the lack of pre-audit certificate. Right. So the purpose of the pre-audit certificate is to ensure funds for the current year of the year in which the contract is signed are available. There's really no question that they were available. There's no question that the finance officer ensured they were available. There's no dispute that he did sign a pre-audit certificate. The dispute is whether the placement of that pre-audit certificate on the purchase order rather than the order form invalidates the agreement. And there's no case law on that. No, all we have is the statute. You have the statute. Right. You don't have any cases addressing. All of them talk about the presence or absence of a pre-audit certificate. Nothing addresses. On the written contract. Sure, but they're all part. And it wasn't on the written contract. I would say they're all part of the same contract. Well, I know you would say that, but that's not what the statute says. It says written contract or purchase order. It doesn't contemplate there being multiple documents that are all part of the same contract. And I'd say if we're saying it needs to be on all of them, does it need to be stamped on the terms of service? Does it need to be stamped on every document? And there's also a question of whether it was stapled to them or otherwise the purchase order was attached to the order form, in which case would that satisfy it? The statute allows you to put it on the purchase order form if there is no written contract. But there was a written contract here, and it doesn't say you can then attach it to the pre-order form. You're supposed to be attaching it to the written contract. But I would say attaching the purchase order to the order form would accomplish that. You know, if I could tell the Maryland legislature that there are a lot of other ways they could accomplish what they say in the statute, I'm not sure that would go very far. And we're not even in Maryland. This is North Carolina. My view on accomplishing the same thing would not go there. Well, talk to me about the second argument. The second argument is there's a whole evidentiary dispute with policy 7400. That's in the brief. But I would say even if we're taking the policy 7400 limited, the superintendent's authority, North Carolina is clear that the parent authority is allowed against the governmental entity. I see my time is up. I can address it more in rebuttal. All right. Thank you. Thank you. Ms. Stagner. Good morning. May it please the Court. I'm Deborah Stagner here on behalf of the Johnston County Board of Education. The Board asked the Court to uphold the summary judgment granted by the District Court, which was allowed on three separate and independent grounds, as this Court has recognized in the previous argument. I'm going to ask you to speak up as well, if you wouldn't mind. Thank you. Sorry, Your Honor. The Board of Education asked this Court to affirm and uphold the grant of summary judgment to the Board of Education. The District Court correctly applied the relevant law to undisputed facts and held that there were three separate and independent grounds for granting summary judgment to the Board of Education. Well, I'm just curious. Sometimes you apply Virginia law. Sometimes you apply North Carolina law in this case. What's the delineating factor? Your Honor, the contract, the order form, had a choice of law provision for Virginia. And so Virginia law should apply to any contract law, any terms of contract. We contend, and I don't believe that K-12's counsel has disputed, that the law governing the authority of a North Carolina school board must be North Carolina law because that's the only, that's the entity that creates it. The General Assembly of North Carolina creates the school boards and sets out their authority, the scope and nature of their authority, and their ability to contract. So to the extent that the ability of North Carolina school boards to enter into contracts is an issue of law that we look to, we would have to look to North Carolina law because that's where it was created. Does it matter where the source of the authority for school board contracting comes from, both in the way it's submitted, the form in which it's submitted, and also the monetary limits on the superintendent's authority to contract? Does it matter whether the source of the authority is a Virginia statute or a North Carolina statute or a legislative ruling in North Carolina or a school board edict? In other words, there are multiple sources of law for the way that school boards can proceed. As Judge Floyd points out, one of them is in this case, and there could be additional sources of law. It could be decisional law from the North Carolina courts. There can be legislative statutes. There can be school board rules and regulations. So where are the sources of law for what the school board is doing here, and does it matter what the sources of law are? Well, thank you, Your Honor. Yes, the sources of law for the school board's authority are North Carolina. Are what? North Carolina law. Okay. As to the sources of the school board's authority and its ability to delegate in those delegations. That's all under North Carolina. So the delegation authority to school superintendents is a matter of North Carolina state law. Yes, Your Honor. It's not a question of this particular school board. The state law allows a school board to delegate authority in some instances to a superintendent, and the board's policies delineate where that delegation occurs. Does state law put a limit on the amount of the authority, a monetary limit on the authority of school superintendents? Under some circumstances, but not related to this case. It's not related to here. So as to contract, a school board could delegate a higher limit to its superintendent or a lower limit to its superintendent. That would be a matter of public record in the board's policies. And there's been quite a discussion about whether the- Okay. But your point generally is that the school board's authority was exercised with respect to that $90,000 limit within the framework of state law. That's correct, Your Honor. I would say to Judge Floyd's question, though, that the contract law between North Carolina and Virginia is very similar. And so because K-12 cited in great length to North Carolina cases, we replied with North Carolina cases. Virginia cases as to the question of contract law, I believe, are the ones that apply. But I think that the decision comes out the same no matter whether you look to Virginia or North Carolina contract law as to apparent authority or as to the immunity arguments which K-12 raised, which really are not applicable in this situation. K-12 contends that this was, if you look at this on an annual basis, that it was within the $90,000 limit. And you say, no, the contract was actually a three-year contract for $259,000. And why would you have us look at it in terms of the $259,000 limit? Well, as Your Honor's previous question made very clear, if you allow a superintendent or a lower-level employee to simply evade the policy by dividing up a contract into yearly installments, then they could enter a tenure contract for a much greater amount than they would be authorized to in this case. Which would be tying down the school district for a very long time for a very substantial type of money. And to commit the school board to large sums of money over a long period of time, which would deprive it of flexibility. It just can't be the intention or the meaning of that limitation. And in fact, there's no ambiguity in the policy. The language says that the superintendent or designee is authorized to enter into contracts involving amounts for up to $90,000, period. The contract that K-12 is attempting to enforce was for $260,000. The amount that they are trying to enforce is much higher than the superintendent is authorized to enter into a contract for. And that was on the face of the contract? That's on the face of the policy, the policy that delegated. No, I mean on the contract for the $259,000. Well, so the contract was for $86,000 per year for a total of three years. K-12 is not attempting to enforce only one year. They're attempting to enforce the entire $250,000 plus over a three-year period. So the contract was paid for in one year at least, right? It was paid for in year one. And it would have been paid for in year two if they had done the proper, or maybe I guess it would have been if they had signed, if they put this form in the correct place, right? If the pre-audit certificate had been on the face of the order form, which is the document that they're attempting to enforce, then it would have been a valid contract. The purchase order was not a part of the contract. Pre-auditing is a process that occurs before the money is obligated. You cannot pre-audit before the money is obligated when you do a purchase order several days later. But for that mistake, two years of this three-year contract would have been, and I don't know that there's any real dispute about the third year. Because we never got there, right? No. The contract was terminated by the board according to its terms prior to any services being provided under year two or three of the contract. Right. But if the board had in fact affixed this thing properly, it wouldn't have terminated it with respect to year two, but it would have still terminated it with respect to year three. I don't know that there's anything to support that in the record. Oh, I'm sorry. This wasn't a trick. I thought that you actually said that. I mean, I thought that was the position. No, the position is that the contract was properly terminated as to period. Right. I understand that. But I thought that your first argument, the first argument addressed by the district court was this business about the, which I totally understand that the pre-audit form, it wasn't put in fixed correctly. If it had been affixed correctly and in a timely manner, would the board still be saying there was no contract? No. No, that's all I was saying. And so that contract would have been a valid three-year contract. I thought that was the second year. Well, it would have been valid for years two and three. Years two and three are all part of the same order form. I see. Okay. Got it. I thought the second year had its own order form and the third year, you know. No. And that's if there had been three separate order forms, three separate contracts, then we wouldn't be here, Your Honor. Those would have been within the superintendent's authority if they were separate individual 85-year contracts. So you're saying that the order form covered all three years. The order form covered three years. K-12 is attempting to enforce years two and three. And the Cabarrus County case that we cited is almost identically on point with this. There, the county determined that it did not have money to appropriate for subsequent years of the contract. They terminated the contract and then argued that there was no pre-audit certificate and, therefore, it was an invalid contract. And the court and the plaintiffs argued that the first year of the contract was pre-audited. Just as in this case, the first year under the purchase order, there was money, it was paid, that part was fulfilled. But the court said because there was no pre-audit certificate as to the entire contract on the face of the contract, years two and three could not be enforced. Okay, but so I'm sorry I'm not understanding this, but I don't understand about the first year. See, I thought the pre-audit certificate thing only applied, first I thought it only applied to the second year, but now I see it applies to the second and third year. But if there was a problem with the pre-audit certificate with respect to the first year, was there? There was no pre-audit certificate on the contract. I see, but the board just overlooked that or something. Well, the board never got this contract. It was never presented to the board for approval. K-12 is citing to a purchase order that was executed several days after to say, look, there was a pre-audit certificate on the purchase order. Maybe I'm asking the wrong question. How did K-12, whatever it is, get paid under the first year? They were paid because there was a purchase order issued for payment of the first year of the contract. So the board just didn't assert its defenses the first year. Is that what you're saying? Well, no, the contract that K-12 was attempting to enforce was never presented to the Board of Education. What happened was that the superintendent entered into the order form for a three-year subscription, if you will. A purchase order was issued and sent to the finance department for payment for year one, and that was never presented to the board either, but it was within the superintendent's authority. Okay, but maybe I used it wrong. Okay, the board didn't assert its defenses because the board didn't know about them. That's certainly true. But it didn't assert its defenses to the first one. The board did not assert as to the first year of the contract. Okay. Then the board attempted to terminate the contract for the non-appropriation clause because, in fact, while there was money and it is the line item, for your honor, joint appendix page 172, contracted services, and it is a very large line item. It does not include just this provision, but contracted services can include things like contracts for physical therapy for students, any kind of contracted services. So the arguments of the board in our brief as to all the needs of the school system having increased and not allowing for funds for this. Are you saying there's a bottom line that the board wasn't properly informed as to years two and three? The board was not properly informed as to the contract in its entirety. Okay. But paid the first year by mistake or whatever. So you would prefer throughout this case to have the contract looked upon as a unitary whole? Yes, your honor. And your point is this is a unitary whole, and it has to be considered as a unitary whole. And if you consider it as a unitary whole, it exceeds the school superintendent's authority. And it was also not presented properly. The contract as a whole was not presented properly to the school. Yes, your honor. There are two reasons why the contract is invalid. Number one, it did not contain a pre-audit certificate. Number two, it was never approved by the Board of Education. It exceeded the superintendent's authority. The apparent authority argument, which plaintiffs make, is that the superintendent could have been expected to be the type of officer who would sign a contract. But the point is it is a single contract rather than three separate contracts. If there were separate contracts for the second and third year, the superintendent, based on the lack of funds, would not have signed a second year or a third year for this contract. So the result would have been the same in your book. Yes. The cases that K-12 cites for apparent authority being applied against public officials in North Carolina involves cases where the entity was either aware of or relied on the mistake or the misapplication of law and reaped a benefit. And the courts applied an unjust enrichment theory when money had already been paid for services rendered or in another case where there was a willful misleading of the public that led to a missed deadline for appealing an ordinance and therefore the court said you cannot apply the doctrine of estoppel to allow a public entity to mislead the public. And so those cases are not on point here. They're not applicable to the situation that we have here. The board did not gain... This is in federal court on diversity. Yes, Your Honor. It's interesting because all the discussion is of state law cases. Yes, Your Honor. We... North Carolina... I mean, we're happy to have it because we have diversity jurisdiction. North Carolina School Board at Virginia Corporation, Your Honor. Yeah. So as to the... We believe that the case law we've cited that limits the authority of a board of education, it simply is a void contract and the case law is clear that a board of education cannot be bound to a contract that does not contain the preaudit certificate. The court could stop there. The district court could have stopped there. But as a second reason why the contract is invalid, the superintendent did not have actual authority and did not have apparent authority. The case of Rode, Franklin County, the court said that a person of ordinary prudence is bound with knowledge of the authority of the public officers with which they're dealing. Well, with that much money at stake, you would seem to want to know if somebody had the authority to do what they were doing. I mean, it would seem to put you on notice that, well, I want to make sure that, you know, you've got, you know, that you've got the authority to commit and allocate. And in North Carolina, all of the actions of a board of education are taken in public or a matter of public record. All the policies of a board of education are matters of public record. So this isn't as though there were some private corporation that had a... It was on the July website? So the policies are always on the board of education's website. There's been some, there was an issue raised about the earlier version of the policy. There was no material difference between those two versions of the policy. Where is the $90,000 of superintendent authority? Where would one find that? In the board's policies that are posted on the board's website. And we produced that policy. Are they in the joint appendix? Oh, I'm sorry, in the joint appendix. No, I'm not sure that was the question, but that's worth knowing. Page 58 and page 205. Okay. So that would have been information that a corporate entity attempting to contract with the board of education could easily have found policies, asked for the policies, made itself aware of the policies. I think that the standard of an ordinarily prudent person would apply in that case. And K-12 simply didn't take the due diligence to make sure that they were contracting with an entity or with an official that had the authority. They point back to the previous contract signed by a previous superintendent. But in that case, it was a different term. And, in fact, those were distinct one-year contracts. It was a renewable. You could renew after one year. That's not the case here where they're attempting to enforce a three-year contract. And the last basis for, I think, the district court's correct decision is that there was simply a lack of funding. The boards of education do not have the ability to tax and raise money on their own. Boards are bound by the county commissioners providing operating funds. And in this case, the county commissioners provided less money than the board of education asked for. While the specific line item increased, there were other obligations that the board was bound to carry out in the education of its students. And contracted services is a very broad category, and this was one. But because the amount increased, does the board have some obligation to put either, or maybe you did, put an affidavit in the record or put a witness forward that said that? The deposition testimony of Dr. Renfrow, the superintendent, and the affidavit of the finance officer discussed the needs of the school system increasing. There was no specific discussion about that line item, but there was overall generally an increased need and increased demands and obligations on the school board, and they had to evaluate. Well, let me ask you this. If the line item for this contract had stayed the same and the needs had increased, we wouldn't know it, would we? I mean, do we have, in other words, do we have some sort of, I understand your argument, but do we have either in their deposition or somewhere else a statement that they didn't have, there wasn't money, they didn't have money for this, or was it just, I understand there's testimony that needs have increased, costs have increased. Yes, Your Honor. There is testimony that there was no money for this contract because of other needs of the school system. It was not broken down into the level of detail as to that. Okay, but there is that testimony. Yes, Your Honor. And that was a deposition? It was in Dr. Renfro's deposition affidavit and the finance officer's affidavit as well. Okay. They did not take the deposition of the finance officer. Okay. Thank you very much. Thank you, Your Honor. Mr. Roberts, you have reserved some time for rebuttal. Yes, Your Honor. Thank you. So, just as you guys were just talking about, in Dr. Renfro's testimony, he did talk about various increases elsewhere, but he was clear that these weren't the same funds that would be applied to the contract. I think, I don't want to redo it all now, but if you look back to about 157 to 160, I believe, he talks about, you know, federal funds not coming out of, that these weren't the funds that would be used here for the contract. Do you agree that you are trying to collect on a three-year contract? Yes, it is a three-year contract. Okay. I'd also point out, counsel mentioned the previous contract, and I think that's a basis for there being a reasonable reliance here, is that there was a two-year contract. The total amount of that contract was well over $90,000. And contrary to what counsel has said, it wasn't two one-year contracts. There was the ability to opt out on 30 days' notice. That doesn't make it two contracts. That's an opt-out provision. I mean, if we're going to call that two contracts, then you would call the instant contract free contracts because there was a subject appropriations provision. I mean, it has to be either one way or the other. So, it was a two-year contract. I think they were reasonable. The K-12 Insight was reasonable in relying on the superintendent once again having authority, as it seems he had on the first contract, which went all the way through. It also mentioned, counsel said that, for its policies or a matter of public record, they're on the website. There's nothing in the record on that. There's no affidavit. There certainly isn't anything saying they were on the website as of the time the contract was executed. So, I don't think counsel's proffer is appropriate evidence here. I think evidence in the record, it's just not there. Okay, let's just assume for purposes of the argument here that they were on the website. I don't think that that's definitive. That's why I thought that was your position. That's why I wasn't sure why you're making the argument. I think it's relevant to reasonable reliance or whether they're justified in thinking that the superintendent had apparent authority. I don't think it's definitive, one or the other. And I point to, there are several North Carolina cases in which amounts much greater than this were upheld. You have Lee versus Wake County, where deputy commissioner went into settlement negotiation with authority to up to $100,000, agreed to $750,000. North Carolina Court of Appeals upheld that agreement and upheld his apparent authority. You've got Pritchard versus Louisville City, where there was actually an ordinance limiting firefighter vacation leave to 360 hours. Fire chief had told, and counties, the manager had told firefighters they could accumulate more than 360 hours. The court interpreted those promises as supplemental employment contracts and upheld those supplemental employment contracts on the basis of apparent authority. I mean, there you have the city ordinance, which is up to record. That's law. That's not board policy. That's, I think... As to the third ground, when it says this agreement is contingent upon the continued availability of appropriation subject to cancellation without penalty of funds not appropriated by the client or otherwise not available, wasn't the school board district trying to protect itself against the inevitable fluctuations that come in school board appropriations? Maybe the focus is broader than a particular line item because what the school board is saying is, you know, we don't know from one year to another what our appropriations are going to be. And at least in Virginia, and I think in North Carolina, school boards don't have the authority to make up any kind of shortfall through taxation. And so given the limitations on school board authority, wasn't that provision in the contract included to protect the board against just this sort of contingency, which is that the appropriations would result in a shortfall and that the school board should maintain the flexibility to devote what remaining funds it had to teacher salaries? My time is up. May I answer the question? Yeah. Okay. I would say it is in there to protect school boards, and if we were talking about a decrease in funds or if the county had said, had refused to fund this contract, that would be one thing. Oh, their funds went up, and I think this line item went up, and I don't think it's just for the school board to interpret the contract and figure out whether funds were available. I think, as always, it's for the trier of fact to determine were funds available. That's a factual question. They certainly don't think their funds went up. The funds did go up. Their appropriations went up, I think, $4 million. So it did go up. I think it's a factual question whether funds were available. I'm sure the expenses went up, too. I'm sure, but in different parts of. Okay. Thank you. We'll come down, Council, and take a brief recess. This honorable court will take a brief recess.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Henry F. Floyd